IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

           Plaintiff,

v.

ANTONIO B. SECAPURE,

           Defendants.

NO. C 07-1050 TEH

ORDER

The United States moves for summary judgment in this matter, seeking to reduce to judgment outstanding federal tax assessments against defendants Antonio B. Secapure and Elsa M. Secapure, to set aside the transfer of their residence at 208 Starling Way in Hercules, California to their son, Anthony M. Secapure III, and to foreclose federal tax liens on that property. The Court heard argument on the motion on March 24, 2008. For the reasons set out below, the Court is prepared to grant the motion, provided the government submits evidence of the recorded tax liens it alleges in its Complaint.

**FACTUAL BACKGROUND**

This case arises from a Complaint filed by the United States against taxpayers Antonio B. Secapure, Elsa M. Secapure, and their son Anthony M. Secapure III, the California State Board of Equalization, and the Everhome Mortgage Company. The Complaint seeks relief for unpaid taxes.

1   In January, 1998, the IRS notified defendants Antonio B. and Elsa M. Secapure that
2   their 1994 and 1995 tax returns were being audited. In April, 1998, the Secapures filed their
3   (late) 1996 tax return, and that return was added to the audit.[1]

4   After the January, 1998 audit notice was sent to the Secapures, they started
5   encumbering their real property. On March 13, 1998, the executed a deed of trust for
6   $50,000 on a property in Hercules with their son, Anthony M. Secapure, as the beneficiary.
7   Pl. Exh. 10. A week later, they executed two more deeds of trust in favor of their son, one
8   for $75,000 on a property in Richmond, Declaration of Thomas Moore In Support of Motion
9   for Summary Judgment Exh. 11,[2] and another for $60,000 on a property in "Herman's
10  Addition." Exh. 12.[3] Mr. Secapure testified in a different case that on March 24, 1998, Mr.
11  Secapure executed a deed of trust on the Starling Way residence for $69,000 in favor of his
12  mother-in-law, when he owed her only a little over a thousand dollars.

13  On February 1, 2000, the Secapures transferred their Starling Way residence to their
14  son Anthony by Grant Deed. The transfer was a "gift," and the Secapures admit that
15  Anthony paid no consideration for the transfer. The Secapures said they gave the property to
16  their son because they wanted him to have a place to live, but he had been living there since
17  1990.

18  The Secapures continued to live in the home (with their son) until 2004, and later
19  moved back into the house. Even though Anthony began claiming the property taxes and
20  mortgage interest as deductions on his taxes, the government submitted evidence that Mr.
21  and Mrs. Secapure paid the real property taxes, the mortgage payments, insurance and
22  utilities on the property until at least 2005. They continued to clean the yard, and paid to

---

[1] The Secapures were notified that the 1996 return had been added to the audit in March, 2000.

[2] Unless otherwise noted, further references to Exhibits are to Exhibits to the Moore Declaration.

[3] The government states (without support) that these were, respectively, a duplex and a parking lot. MPA at 9.

2

have the roof replaced. Mrs. Secapure testified at deposition that Anthony repaid them for the mortgage payments and utilities, although "sometimes" the Secapure parents paid them.

On various dates between 2000 and 2004, the government made assessments against Mr. and Mrs Secapure for unpaid federal income taxes, penalties, and interest for the tax years 1995, 1996, 2002 and 2003. Exhs. 14-17 (Certificates of Assessment, Payments and Other Specified Matters). The Complaint alleges that in 2005, the government recorded tax liens in Contra Costa County against Mr. and Mrs. Secapure, and against Anthony M. Secapure III as their nominee.

The government now seeks summary judgment on this action to reduce the tax assessments to judgment, set aside the conveyance of property to Anthony M. Secapure as fraudulent, and to foreclose the tax liens. California's State Board of Equalization, holder of a state tax lien against defendants, filed a statement of non-opposition to the motion (and a stipulation concerning priority of claims). Everhome Mortgage (owed only about $6,000) also filed a stipulation setting out priority of claims.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than

3

for the moving party. *Id.* at 322-23. However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the District Court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250.

**DISCUSSION**

**I.     Reducing Assessments to Judgment**

The government first seeks to reduce four outstanding assessments against the Secapures to judgment.

The government bears the burden of proof in an action to collect taxes. It can carry its initial burden by introducing its assessment of taxes due;[4] a Certificate of Assessments and Payments is presumptively correct evidence of a taxpayer's liability, and is the proper means of establishing that assessments were properly made and that notices and demand for payment were sent. *Koff v. United States,* 3 F.3d 1297, 1298 (9th Cir. 1993); *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983). The burden then shifts to the defendant to show that the assessment is incorrect; if the defendant can rebut the presumption by showing it is "arbitrary or erroneous," then the burden shifts back to the government to "establish the correctness of the assessment by sufficient and competent evidence." *United States v. Molitor*, 337 F.2d 917 (9th Cir. 1964); *Stonehill*, 702 F.2d at 1294.

The government submitted Certificates of Assessments, Payments, and Other Specified Matters for the tax years 1995, 1996, 2002, and 2003. Exhs. 14-17; Declaration of Jerry Reed in Support of Motion for Summary Judgment ¶¶ 2, 4 (setting out the Secapures'

---

[4] Certificates of Assessments and Payments are admissible pursuant to Rules 803(3) and 902(4) of the Federal Rules of Evidence. *United States v. Beary*, 2007 WL 2712217 (N.D. Cal. September 14, 2007), at \*5, *citing United States v. Lorsen Electric Co.,* 480 F.2d 554, 555-556 (2nd Cir. 1973); *United States v. Strebler*, 313 F.2d 402, 403 (8th Cir. 1963).

4

"total outstanding tax debts" including accrued interest and penalties, as of November 5, 2007). The amounts of the original tax liability and total amounts are as follows:

| Tax Period Ending | Balance Shown on Certificate | Total Tax Debt as of November 5, 2007 |
|---|---|---|
| 1995 (Antonio Secapure only) | $48,356.65 | $61,019.78 |
| 1996 | $10,082.48 | $19,796.50 |
| 2002 | $3,946.07 | $4,982.89 |
| 2003 | $5,392.53 | $6,564.35 |
| Total: | $67,777.73 | $92,363.52 |

The Secapures' opposition to the motion fails to address, and therefore fails to rebut, the government's *prima facie* case of tax liability. The United States has therefore established the defendants' tax liability.[5]

## II. The Starling Way Property

The amount of a delinquent taxpayer's liability is a lien in favor of the United States upon all property belonging to the taxpayer. 26 U.S.C. §§ 6321, 6322; *United States v. McDermott*, 507 U.S. 447, 452-55 (1993)(lien arises upon assessment). When there has been "a refusal or neglect to pay any tax, or to discharge any liability in respect thereof," the United States may bring an action to enforce the lien created by 26 U.S.C. § 6321, or to subject any property held by the taxpayer to the payment of the tax. 26 U.S.C. § 7403(a).

The United States seeks to foreclose tax liens on the Starling Way property based on

---

[5] The government also argues that Antonio B. Secapure's 1995 tax liability is *res judicata* because the United States Tax Court determined he was liable for the tax deficiencies and statutory additions asserted against him by Decision dated March 30, 2004. Exh. 13. "[I]f a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is *res judicata* as to any subsequent proceeding involving the same claim and the same tax year." *Commissioner of Internal Revenue Service v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948), *quoted in United States v. Hoffman*, 643 F.Supp. 346, 348 (E.D.Wis. 1986). Therefore, *res judicata* is an additional ground for judgment in favor of the United States on the 1995 assessment.

5

1  the assessments above. It contends under a number of theories that Antonio and Elsa
2  Secapure are the true owners of the Starling Way property.  As set out below, the Court
3  finds that the government has not proven that the Secapure's transfer of the property to their
4  son was fraudulent under California law.  However, the government has shown that Anthony
5  M. Secapure holds the property as their nominee, and that they are the true owners of the
6  property.

### A. Fraudulent Conveyance To Anthony M. Secapure

The United States seeks to set aside the conveyance of the Starling Way property to Anthony M. Secapure on the ground that the transfer was fraudulent. *See Bresson v. C.I.R.*, 213 F.3d 1173 (9th Cir. 2000)(determining fraudulent conveyance under California law); *U.S. v. Verduchi,* 434 F.3d 17, 20 (1st Cir. 2006)(court looks to state law to see if property fraudulently transferred); Cal. Civil Code § 3439.07(a)(fraudulent conveyance can be set aside).

#### 1. Fraudulent Conveyance Under Civil Code § 3439.04(a)(1)

The Government has not carried its burden of showing that the transfer to Anthony Secapure was a fraudulent transfer under Cal. Civil Code § 3439.04.

Cal. Civil Code § 3439.04, part of California's version of the Uniform Fraudulent Transfer Act ("UFTA"), provides that

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation
>
>  ...(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

The government must show actual intent to defraud by a preponderance of the evidence, *In re Beverly,* 374 B.R. 221, 235 (9th Cir. 2007).  Courts commonly rely on circumstantial evidence of intent to defraud, *Filip v. Bucurenciu*, 129 Cal.App.4th 825, 834 (2005), specifically on the "badges of fraud" now codified in Civil Code § 3439.04(b).  The presence of one or more of the "badges of fraud" does not create a presumption of fraud, but is evidence from which an inference of actual fraudulent intent may be drawn. *Wyzard v. Goller*, 23 Cal.App.4th 1983, 1191 (1994).  "There is no minimum number of factors that

6

must be present before the scales tip in favor of finding of actual intent to defraud. This list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other." *Filip,* 129 Cal.App.4th at 834.

While several of the badges of fraud are clearly present here, the United States has failed to offer evidence sufficient to prove others.

### Civil Code § 3439(b)(1): Whether the Transfer or Obligation Was to an Insider

Mr. and Mrs. Secapure transferred the Starling Way property to their son, an insider. *Menick v. Goldy,* 131 Cal.App.2d 542, 547 (1955)(parent and child have "confidential" relationship; the "relationship of parent and child, when coupled with other suspicious circumstances, may be sufficient to raise an inference of fraud in the conveyance").

### Civil Code § 3439(b)(2):  Whether the Debtor Retained Possession or Control of the Property Transferred After the Transfer

The Secapures continued to live in the property for approximately four years after they gave it to their son.  Exh. 18 ¶¶ 74-78 (admissions).  They also continued to pay insurance, taxes, and, at least in part, the mortgage and utilities, and would come by and clean the yard even after they moved out.  Exh. 19 at 28 (Elsa Secapure deposition).

### Civil Code § 3439(b)(4):  Whether Before the Transfer Was Made ... The Debtor Had Been Sued or Threatened With Suit

The Secapures received notice that they were being audited on January 28, 1998. Exh. 2A.  They executed a deed of trust to Anthony on the Starling Way property on March 13, 1998.  They transferred the property to him in February, 2000.

### Civil Code § 3439(b)(5):  Whether the Transfer Was of Substantially All the Debtor's Assets

The government argues that "almost all of Mr. and Mrs. Secapure's property had been encumbered with deeds of trust with their son named as the beneficiary," citing to the various deeds.  But nowhere does the government make any showing about the sum total of the Secapure's assets.  Antonio Secapure disputes this point, claiming he owned a business, a half-interest in a duplex, and lots in Richmond and Southern California.  Antonio B. Secapure Decl. ¶ 11.  The government has completely failed to prove  this "badge" of intent.

7

**Civil Code § 3439(b)(7):  Whether the Debtor Removed or Concealed Assets**

The government argues that the Secapures tried to "conceal the true extent" of their assets by encumbering two other pieces of property with deeds of trust to Anthony, "making it appear that the properties were encumbered when they owned them free and clear" from any bona fide lien other than the mortgage.

The United States has offered no authority to suggest that encumbering property with liens is considered removing or concealing assets for fraudulent transfer purposes.  The 1986 Comments to the statute concerning "removing and concealing" assets cite to cases that involve physical concealment.  ("*Bentley v. Young*, 210 F. 202 (S.D.N.Y.1914), aff'd, 223 F. 536 (2d Cir.1915) (debtor's removal of goods from store to conceal their whereabouts and to sell them held to render sale fraudulent); *Cioli v. Kenourgios*, 59 Cal.App. 690, 211 P. 838 (1922) (debtor's sale of all assets and shipment of proceeds out of the country held to be fraudulent notwithstanding adequacy of consideration)").  Accordingly, the government has not shown this badge of fraudulent intent.

**Civil Code § 3439(b)(8):  Whether the Value of the Consideration Received by the Debtor was Reasonably Equivalent to the Value of the Asset Transferred or the Amount of the Obligation Incurred.**

The Secapures received no consideration in exchange for transferring the Starling Way property to their son.  Mr. Secapure admitted that Anthony never paid money, property, or assets worth over $10.00 for the property, and admitted that between 1995 and 2005, Anthony never paid consideration for the transfer.  Exh. 18 (admissions) ¶¶ 3, 51-59.

**Civil Code § 3439(b)(9):  Whether the Debtor was Insolvent or Became Insolvent Shortly After the Transfer was Made or the Obligation Was Incurred.**

The UFTA provides that "[a] debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." Civil Code § 3439.02(a).  Again, the government failed to submit any evidence about the Secapures' overall debts, assets, or net worth before or after the transfer.  Moreover, Antonio Secapure declared that the transfer did not render the Secapures insolvent because Elsa Secapure was employed, he had a pension,

8

and he owned a business, a half-interest in a duplex, and lots in Richmond and Southern California. Antonio B. Secapure Decl. ¶ 11.[6]

The UFTA also provides that "[a] debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." Cal. Civil Code § 3439.02[c]. During examination in a state court tax action in 2005, Antonio Secapure admitted that in 1998, he had "creditors that he couldn't pay." Exh. 22 at 55. This, standing alone, is not enough to establish that in 2000, when the house was transferred, the Secapures became insolvent.

The government has failed to carry its burden of proof on this badge of fraud. Although the government claims that the Secapures have not proven they were solvent, Reply at 7, the burden of proof is on the government, not the defendants.

### Civil Code § 3439.04(b)(10):  Whether the Transfer Occurred Shortly Before or Shortly After a Substantial Debt was Incurred

The government argues that the Secapures transferred an interest in the Starling Way house to their son just 44 days after they learned they were being audited, and that they granted him the house during the midst of an audit. However, although the government makes no argument and cites no authority as to when the Secapures "incurred" their tax debt, it later argues that "the government becomes a creditor when the taxable period (year) ends." Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("MPA") at 11:22, *citing Edelson v. Commisssioner*, 829 F.2d 828, 833-34 (9th Cir. 1987). The deed of trust or the grant deed were not made "shortly" before or after the 1995 and 1996 tax debt was incurred.

In sum, to be entitled to summary judgment, the government must show actual intent to defraud by a preponderance of the evidence. It has not "affirmatively demonstrat[ed] that no reasonable trier of fact could find" for the defendants. *Celotex,* 477 U.S. at 322-23. All the government has shown is that the Secapures transferred their house to their son, for no

---

[6] On the other hand, he also declared that he plans to either have his son refinance the house or transfer it back to him so that he can pay his taxes, *id.* ¶ 13, which suggests that he may be insolvent now.

9

consideration and retained control of it at a time they were being audited by the IRS. This is not proof of a fraudulent transfer.

### 2. Fraudulent Conveyance under Cal. Civil Code § 3439.04(a)(2)

The UTCA also provides that a transfer is fraudulent as to a creditor if the debtor made the transfer:

> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor ...:
>
> (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Cal. Civil Code § 3439.04(a)(2). Again, the government has not shown anything about the Secapures' overall assets before or after the transfer, and therefore has not shown that they transferred the property "when they knew they were about to incur/had already incurred substantial tax debts, *leaving them with insufficient assets to satisfy this tax debt.*" MPA at 11:4-5 (emphasis added).

### 3. Constructive Fraud Under Cal Civil Code § 3439.05

Cal. Civil Code § 3439.05 provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

The government becomes a creditor when the tax year ends. *Edelson*, 829 F.2d at 834. Therefore, the government's claims as a creditor arose in 1995 and 1996, before the transfer in 2000. As set out above, the Secapures made the transfer without receiving reasonably equivalent value in exchange.

The government argues that the Secapures "knew they were indebted to the United States, and did not pay off their debt as it became due," and were insolvent under Civil Code § 3439.02(c) because they "could not pay their debts." MPA at 12:19-21. Yet the government cites only to a hearing transcript in which Mr. Secapure testifies that *in 1998,* he could not pay his bills. Although Mr. Secapure acknowledged at a deposition that he knew

10

he owed the IRS money in 1997, Exh. 20 at 28, he also testified he had no idea at that time how much money he owed.

Without more, the government is not entitled to summary judgment on this theory.

## B. Nominee Lien Theory

Nonetheless, the government has shown that Anthony Secapure was the "nominee" of Mr. and Mrs. Secapure – that is, he held the title to the property for the benefit of his parents. *See Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001) (citing Black's Law Dictionary (7th ed.1999).

To satisfy legitimate tax debts, the government may impose a lien on property held by an individual who is merely the nominee of the taxpayer.  26 U.S.C. §§ 6321, 6331; *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977) (holding that § 6321 allows the government to impose a lien on property in the hands of a third party straw man and that § 6331 permits a levy upon such property);  *United States v. Bell*, 27 F.Supp.2d 1191, 1195 (E.D.Cal.1998) and cases cited therein (property of the alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability); *United States v. Marsh*, 114 F.Supp.2d 1036, 1043 (D. Hi. 2000)(same);  *Towe Antique Ford Found. v. I.R.S.*, 791 F.Supp. 1450, 1454 (D.Mont. 1992)(same).

"State law governs the determination of whether there exists an alter ego from whom the government may satisfy the obligation of a taxpayer." *Wolfe v. United States*, 806 F.2d 1410, 1411 n. 3 (9th Cir.1986).  Courts throughout the Ninth Circuit rely on the following six factors to determine nominee status:

1) Whether no consideration or inadequate consideration paid by the nominee;
2) Whether the property was placed in the name of the nominee in anticipation of litigation or liabilities;
3) Whether a close relationship between the transferor and the nominee;
4) Whether the parties to the transfer failed to record the conveyance
5) Whether the transferor retained possession; and
6) Whether the transferor continues to enjoy the benefits of the transferred property.

11

*See, e.g., Sharp Management, LLC v. United States,* 2007 WL 1367698, *3 (W.D.Wash. May 8, 2007), *citing United States v. Bell*, 27 F.Supp.2d 1191, 1195 (E.D.Cal.1998) and *Colby B. Found. v. United States*, 1997 WL 1046002, *20 (D.Or. Oct. 22, 1997); *Towe Antique Ford Foundation v. Internal Revenue Service* 791 F.Supp. 1450, 1454 (D. Mont.1992); *see also Holman v. United States,* 505 F.3d 1060, 1065 n.1 (10th Cir. 2007) *quoting Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005).[7]

These factors show that Anthony M. Secapure is his parents' nominee. Anthony paid no consideration for the property. There was a close relationship. The Secapures retained possession of the property and continued to enjoy its benefits for many years. There is no direct evidence that the property was placed in Anthony's name in anticipation of tax liability, but the timing is suspect. Although the transfer was recorded, that is the only factor not weighing in the government's favor. Accordingly, the Court finds that Plaintiff has met its burden on summary judgment of showing that Anthony M. Secapure is the nominee of Antonio B and Elsa M. Secapure.

### III. Foreclosure of Federal Tax Liens

After the district court adjudicates the merits of the United States' claim to the property, it may decree a sale of the property and order distribution of the proceeds from that sale. 26 U.S.C. § 7403(c); *United States v. National Bank of Commerce*, 472 US 713, 719-20 (1985); 28 U.S.C. § 2001(a)(allowing Court to set the terms and conditions of the sale of real property). Although the Court is not required to foreclose tax liens, the Supreme Court has noted that "the limited discretion accorded by § 7403 should be exercised rigorously and

---

[7] In briefing the nominee theory, the government lists *seven* factors – without any citation or support – omitting the factor that is not present in the Secapures' case (failure to record the conveyance) and adding two which are (state property taxes assessed in the name of the taxpayer, other expenses of the property paid by taxpayer). MPA at 13:25-14:13. Although Plaintiff claimed that these were the "traditional elements" of nominee theory at oral argument, the Court has been unable to find any cases referring to property taxes or expenses relating to a nominee theory. The government's error in its own favor, made without bothering to cite any authority, is both suspect and unprofessional.

sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *United States v. Rodgers*, 461 U.S. at 711.

The United States asks the Court to order that it has valid federal tax liens in the amounts listed in Section I above, as of November 5, 2007, plus penalties and interest accruing thereafter, against all property and rights of Antonio and Elsa Secapure, including the Starling Way property.   It also asks the Court to foreclose its tax liens, and order sale of the Starling Way property to satisfy Defendants' tax liabilities.

The Court is prepared to do so.  However, the government has not submitted evidence that the liens themselves have been recorded.  According to the Complaint, the IRS filed with the Contra Costa County Recorder a Notice of Federal Tax Lien relative to each of the assessments made for the 1995, 1996, 2002, and 2003 tax years against Antonio B. Secapure, Elsa M. Secapure, and Anthony M. Secapure as their nominee.  Complaint ¶¶ 11, 26, 30.   At the hearing on this motion, the Court asked whether the United States was required to make a factual showing that the liens were recorded, and counsel for the United States represented that the government had done so with Exhibits 14-17.  However, those Exhibits are merely Certificates of Assessment, and do not show that the government recorded liens.

The Court notes that this failure is consistent with the government's sloppy and incomplete briefing throughout.  The government should not assume that the Court will rule in its favor, either because of the nature of the suit or the opposition (or lack thereof) it faces.  The government bears the burden on summary judgment.  When it seeks a remedy as serious as forced sale of a taxpayer's residence, it must scrupulously make its case.

The Court will grant the motion and authorize sale of the subject property pursuant to 28 U.S.C. § 2001(a), on the terms requested by the government, provided the United States submits the relevant Notices of Federal Tax Liens (or explains to the Court's satisfaction why evidence that the tax liens were recorded is unnecessary).  The United States shall submit the notices, together with a Proposed Order consistent with this Order, within ten calendar days of the date of this Order.   The trial date now set for April 1, 2008 is vacated.

The Order to Show Cause why Defendants' counsel, Charles E. Smith, should not be sanctioned is hereby vacated. There is no justification for Mr. Smith's *continuing* failure to conform to this Court's Local Rules, General Orders, and Standing Orders by failing to register for electronic filing. Compliance with those rules, including those governing registration for and use of electronic filing, is not optional. Although sanctions are fully warranted, the Court, in its discretion, will not impose monetary sanctions. Mr. Smith is hereby on notice of federal court electronic filing rules, and is directed to read General Order 45 in its entirety.

**IT IS SO ORDERED.**

Dated: March 25, 2008

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT